354

**UNITED STATES ex rel. and for Use of GENERAL IRON WORKS CO. et al. v. MAPLES et al. (CRANE CO. et al., Interveners).**

No. 2406.

District Court, W. D. Louisiana, Shreveport Division.

Feb. 13, 1934.

E. W. & P. N. Browne, of Shreveport, La., for plaintiffs.

Jasper K. Smith, Jr., John H. Tucker, Foster, Hall, Barret & Smith, M. C. Trichel, Jr., M. W. Feist, C. F. Currier, and Pugh, Grimmet & Boatner, all of Shreveport, La., and Chas. H. Jackson, Jr., of San Antonio, Tex., for defendants.

DAWKINS, District Judge.

This suit was filed in the name of the United States, on the relation of and for the use and benefit of General Iron Works & Supply Company, and its receiver, Charles Eisen, in which it was alleged that the "defendant, L. C. Maples, was at the time of the transactions hereinafter mentioned, doing business in the name of L. C. Maples Construction Company." It was further alleged that the Hartford Accident & Indemnity Company had become the surety upon the bond of "L. C. Maples, doing business as aforesaid," for the faithful performance of the contract with the government for the construction of "thirty-four sets of double non-commissioned officers quarters" at Barksdale Flying Field, in Bossier parish, for the price of $383,303. It was alleged that the bond was in the sum of $191,651.50. The petition then proceeded to allege that the defendant L. C. Maples, contractor and principal in the original contract and bond with the government, later entered into a subcontract with the O'Pry Heating & Plumbing Corporation, whose name was subsequently changed to Smith-Jones Company, "one of the defendants herein," for the furnishing and installing of the plumbing and heating fixtures in said quarters; that relators "have no copy of said contract," but its terms were recited in substance; further, that the relators, "at the instance and request of said O'Pry Heating & Plumbing Corporation, entered into a contract in writing, wherein and whereby the said General Iron Works Company agreed to furnish said O'Pry Heating & Plumbing Corporation" certain materials for installing in the said buildings, originally contracted for by Maples, and in which the O'Pry Heating & Plumbing Corporation was to install the plumbing and heating fixtures; that the prices charged for said materials by relators were reasonable and proper, and the said O'Pry Heating & Plumbing Corporation promised and agreed to pay the same within thirty days after the dates of the respective invoices; that the materials were furnished and partly paid for, but there

remained due and unpaid $11,356, as shown by "statement annexed and made a part hereof."

Petitioner further alleged as "an additional cause of action" that O'Pry Heating & Plumbing Corporation had made a contract with one "Marcus E. Warden, doing business as Warden Sheet Metal Works," for the furnishing of certain materials and labor, "and which entered into the construction both of the non-commissioned officers' quarters under said contract of said Maples with the United States government, and of forty-two commissioned officers' quarters under the contract of the Ashton-Glassell Company, Inc. with the United States." Further, that the said Warden had contracted with Charles Johnson Company, Inc., of Peoria, Ill., to furnish certain materials for use in the said noncommissioned officers' quarters under the contract of Warden with the Smith-Jones Company (formerly O'Pry Heating & Plumbing Corporation), which materials were furnished to the extent of $2,992.87, "the reasonable prices thereof," and which Warden furnished to Smith-Jones Company, and the latter in turn furnished to the said Maples, and to said Ashton-Glassell Company, Inc., and which "entered into the construction of said non-commissioned officers' quarters," as respectively contracted for by said Maples, and the said Ashton-Glassell Company, Inc.; that there was a balance due to said Charles Johnson Company, Inc., by Warden of $1,192.95, and "that the said General Iron Works Co., Inc., prior to the appointment of the said Charles Eisen as receiver, had guaranteed in writing to said Charles Johnson Company, Inc. the payment by the said Marcus E. Warden; that Warden had failed to pay said indebtedness and on August 2, 1932, the claim against him had been acquired by relators "for valid and sufficient consideration"; that the balance due for materials to Maples for use in the noncommissioned officers' quarters amounts to the sum of $549.95.

Petitioners further alleged the completion by Maples of the contract with the government, the lapsing of the time required by the statute without the government having sued and prayed for service upon "L. C. Maples, the said Smith-Jones Company and the Hartford Accident & Indemnity Company," and for judgment "against said defendants, individually and in solido," in said sums of $11,356 and $549.95, with interest, "and such further amounts, under the penalty of said bond, in the sum of $191,651.50, as may on the trial hereof be shown to be due, either to relators or to any or all others who may intervene herein," and for reasonable attorney's fees.

This suit was filed on May 10, 1933, and on May 27th following Crane Company, alleging itself to be an Illinois corporation, domiciled at Chicago, intervened and alleged the same facts as to the name of Maples and O'Pry Heating & Plumbing Company, as in the original petition, and that the said "Smith-Jones Company, formerly O'Pry Heating & Plumbing Corporation, L. C. Maples, doing business as L. C. Maples Construction Company, and Hartford Accident & Indemnity Company, are justly and truly indebted unto your petitioner in solido" in the sum of $3,693.54, with interest. The Crane Company further alleged the same facts as to the making of the contracts "by L. C. Maples, doing business as L. C. Maples Construction Company," with the government, for the erection of thirty-four noncommissioned officers' quarters and the furnishing by Maples of "a standard government performance bond with the Hartford Accident & Indemnity Company as surety thereon"; that the O'Pry Heating & Plumbing Corporation had entered into a contract with Maples to furnish the labor and materials for the installation of the plumbing and heating fixtures; that at various times shown on an itemized statement the Crane Company had furnished O'Pry Heating & Plumbing Corporation plumbing and heating materials to the amount of $22,019, upon which payments had been made reducing the balance to the sum claimed in the intervention; that payments were to be made on the 15th of each month following the month in which the materials were furnished; that all of the materials furnished "were used" under the subcontract in said noncommissioned officers' quarters; and that demand had been made upon Smith-Jones Company, L. C. Maples, and the Hartford Accident & Indemnity Company, without avail.

On June 2d Peden Iron & Steel Company, a Texas corporation, also intervened. It likewise alleged the contract by Maples with the government, describing this defendant in the same manner as the other petitioners, as well as the giving of the bond with the Hartford Accident & Insurance Company, as surety; the subcontract between Maples and O'Pry Heating & Plumbing Corporation which had "changed its name to Smith-Jones Company"; that O'Pry Heating & Plumbing Corporation had given a performance

bond in the sum of $61,300, " * * * signed by the United States Fidelity Company, a corporation organized under the laws of the state of Maryland," as surety for the faithful performance of the subcontract with Maples, and which had been duly recorded; that O'Pry Heating & Plumbing Corporation had sublet a portion of the work to be done for Maples to Marcus E. Warden of San Antonio, Tex.; that Warden's contract included the obligation to furnish and install warm air furnaces on the said job, "with the exception of electrical work and gas piping," in accordance with the contract awarded by the United States; that Warden gave a performance bond signed by the New York Casualty Company as surety, in the sum of $7,000, "covering this and other work undertaken by Warden at Barksdale Field, Louisiana"; that all of said contracts, subcontracts, and bonds are governed by the Heard Law; that interveners, at the instance and request of the above-named contractors and subcontractors, agreed to furnish, and did furnish, said Marcus E. Warden materials and supplies necessary for the construction and completion of the said public buildings and for which $1,688.13 remained due and unpaid. Petitioner prayed for services on "L. C. Maples, O'Pry Heating & Plumbing Corporation, Marcus E. Warden and their respective sureties, the Hartford Accident & Insurance Company, the United States Fidelity & Guaranty Company, and the New York Casualty Company," and for judgment in solido against all of them.

On June 14, 1933, the original relators, General Iron Works Company, and its receiver, appeared and moved to dismiss the cause "with prejudice."

On the same day Marcus E. Warden filed an intervention. He also alleged the same facts and the contract between Maples with the government for the construction of the noncommissioned officers' quarters and the giving of the bond with the Hartford Accident & Insurance Company as surety; the subletting by Maples of the work of installing the heating and plumbing fixtures to O'Pry Heating & Plumbing Corporation; the giving by the latter of a performance bond to Maples in the sum of $61,300, with the United States Fidelity & Guaranty Company as surety; that under the terms of said contract and bond O'Pry Heating & Plumbing Corporation and United States Fidelity & Guaranty Company "became liable and bound unto the United States and to L. C. Maples, to prosecute said work and improve-ments to completion according to the terms of the sub-contract," " * * * and to make prompt payments to all persons supplying the contractor with labor and materials in the prosecution of said work provided for in said contract"; the subletting by O'Pry Heating & Plumbing Corporation of a portion of the work to petitioner in "a formal sub-contract" for the installation of the warm air heating furnaces in the forty-two commissioned officers' quarters at Barksdale Field, as well as in the thirty-four noncommissioned officers' quarters, for which O'Pry Heating & Plumbing Corporation would pay to petitioner $14,940, "total for the two jobs of which the sum of $9,015.00 is for the work under this construction job"; that additional work was done and materials furnished under the terms of the contract "on this construction job" to the amount of $2,548, making a total of $11,563, which was earned by the furnishing of the materials and doing the work "on this construction job," and that there remains due to petitioner $4,661.76, "for the portion of the sub-contract covering this construction job * * * intervenor's damage Ten Thousand ($10,000.00) Dollars"; that in performing said contract petitioner obtained materials and supplies from other concerns as follows:

| | |
|---|---|
| Peden Iron & Steel Co., San Antonio, Texas | $1,688.13 |
| Charles Johnson Company, Peoria, Ill. | $ 724.00 |
| Southwestern Seating Company, San Antonio, Texas | $ 61.21. |

Further, that O'Pry Heating & Plumbing Corporation "had not filled its part of its contract with petitioner," or its subcontract with L. C. Maples Construction Company, in that petitioner "has not been paid in compliance with the terms of its sub-contract"; that Maples had not filled his contract with the government because of the failure to pay petitioner, and the said "United States Fidelity & Guaranty Company and the Hartford Accident & Indemnity Company, as surety, thereby became liable" to petitioner for the sum of $4,661.76 "on this construction job." Petitioner also prayed for service upon "L. C. Maples, L. C. Maples Construction Company, Hartford Accident & Indemnity Company, O'Pry Heating & Plumbing Corporation, and United States Fidelity & Guaranty Company"; that petitioners' creditors above named be notified of their right to intervene herein; that further notice be given by publication; and "that its demand be allowed and established and that

it have judgment against all of the defendants, in accordance with law and the Heard law for its debt, interest and attorneys fees," etc.

On June 14, 1933, Taylor-Seidenbach Company, Inc., a Louisiana corporation, domiciled at Shreveport, intervened and alleged substantially the same facts with respect to the original contract between Maples and the government, the former's subcontract with the O'Pry Heating & Plumbing Corporation, the making of the bonds with the Hartford Insurance Company, United States Fidelity & Guaranty Company, and the New York Casualty Company, as sureties; that petitioner had sold to said Marcus E. Warden certain materials to the amount of $238.11, which were used in the construction of the noncommissioned officers' quarters. This intervener also prayed for judgment against Maples, O'Pry Heating & Plumbing Corporation, Warden, and the three bond companies, in solido.

June 26, 1933, the Peden Company filed an amended petition, in which it was alleged that the Ashton-Glassell Company and L. C. Maples were the principal contractors and the Union Indemnity Company and Hartford Accident & Indemnity Company were sureties, respectively, of the two contractors and the performance bonds by the subcontractors, O'Pry Heating & Plumbing Corporation and Marcus E. Warden, were signed by the United States Fidelity & Guaranty Company and the New York Casualty Company, respectively; that $1,125.48 remained due by Warden and O'Pry Heating & Plumbing Corporation on the Ashton-Glassell Company contract and $1,688.13 upon the Maples contract. Other details as to the time the materials were furnished and interest claimed are set forth; and that all of the materials were furnished to Warden "at the express request of all the defendants herein." The prayer was for judgment in solido in the sum of $3,043.61, attorneys' fees, etc.

On June 30, 1933, exceptions were filed by the same counsel, as follows:

(1) By United States Fidelity & Casualty Company to the intervention of Peden Iron & Steel Company of no right or cause of action "and that your petitioner is improperly impleaded in this suit";

(2) By L. C. Maples, an exception of vagueness to the intervention of Peden Iron & Steel Company, in that (a) it does not state whether the contract between O'Pry Heating & Plumbing Corporation and Marcus E. Warden "was verbal or in writing";

nor is it set out in substance, (b) that, although copies of the subcontracts and bonds are alleged to have been annexed to the said intervention, they were not so annexed; (c) that it is not alleged whether the agreement between the said intervener and Warden was oral or in writing; (d) that, although the petition alleges an account of the work and materials furnished is annexed, it was not so annexed; (e) and that the intervention does not allege whether the materials were furnished for the work at Barksdale Field or somewhere else, or that they went into the buildings covered by the original contract;

(3) By the Smith-Jones Company to the intervention of Peden Iron & Steel Company, on the same grounds as urged by Maples;

(4) By the Hartford Accident & Indemnity Company to the intervention of Crane Company, that (a) it is not alleged whether the contract between O'Pry Heating & Plumbing Corporation and Maples was in writing or verbal; (b) intervener does not state whether its agreement with O'Pry Heating & Plumbing Corporation was written or verbal; (c) nor does it state whether the work and materials were furnished at Barksdale Field or elsewhere;

(5) By Hartford Accident & Indemnity Company to the intervention of Peden Iron & Steel Company upon the same grounds as urged to the intervention of Crane Company, as well as the further ground that, although an account was alleged to have been annexed, none was so annexed;

(6) By the United States Fidelity & Guaranty Company, to the intervention of Peden Iron & Steel Company, because (a) it is not stated whether the contract between O'Pry Heating & Plumbing Company and Warden was verbal or in writing; (b) that copies of the subcontract and bond were alleged to be annexed, but were not so annexed; (c) that it does not say whether its contract with Warden was verbal or in writing; (d) that the petition of intervention alleges that an account was annexed, which was not done; and (e) does not show whether the work and materials furnished were used at Barksdale Field or some other place;

(7) By L. C. Maples to the intervention of the Crane Company, upon the same grounds as set forth in (a), (b), and (c) of the exception of the United States Fidelity & Guaranty Company, last mentioned; and

(8) By the O'Pry Heating & Plumbing Corporation to the intervention of Peden Iron & Steel Company, on the same grounds

358

as set forth in (a), (b), (c), (d), and (e) of the exception of United States Fidelity & Guaranty Company to the intervention of this same intervener.

On September 26, 1933, additional exceptions were filed by the same counsel, as follows:

(1) By L. C. Maples to dismiss the intervention of Marcus E. Warden as to "L. C. Maples Construction Company," for the reason that the latter "is merely a trade name under which your appearer operates," and any judgment against it "may be construed to constitute a judgment herein."

(2) By Smith-Jones Company, to dismiss the intervention of Marcus E. Warden, in so far as it attempts to make O'Pry Heating & Plumbing Corporation a party to the suit, for the reason that the petition "shows on its face that there is no longer any such corporation," its name having been changed to that of this mover.

(3) By L. C. Maples, Hartford Accident & Indemnity Company, Smith-Jones Company and United States Fidelity & Guaranty Company, to the intervention of Warden, operating as Warden Sheet Metal Works, because it "has no right or capacity to sue or stand in judgment herein."

(4) By Maples to dismiss the intervention of Taylor-Seidenbach Company, Inc., because it "attempts to make your appearer a party to said proceedings," under the title of L. C. Maples, doing business as L. C. Maples Construction Company, whereas no such legal entity exists. * * * "

(5) By Smith-Jones Company to the intervention of Taylor-Seidenbach Company, Inc., because it states no cause or right of action against mover.

(6) By Hartford Accident & Insurance Company to the intervention of the said Taylor-Seidenbach Company, Inc., because there is a misjoinder of parties defendant in said petition."

(7) By New York Casualty Company, represented through counsel other than those appearing in the foregoing exceptions, to the intervention of Peden Company, Inc., because it discloses no cause of action against mover.

On October 5, 1933, counsel for intervener Peden Company, filed a plea suggesting that it had previously filed an amendment to its intervention "which should satisfy the exceptions of vagueness of L. C. Maples, Hartford Accident & Insurance

Company, O'Pry Heating & Plumbing Corporation, Inc. (Smith-Jones Co.)."

The motion of the General Iron Works and its receiver, who originally filed this proceedings, to dismiss the intervention of Crane & Co. and all other proceedings herein, was on September 20, 1933, overruled by the court, for reasons stated in a memorandum handed down at that time.

These numerous exceptions will be disposed of in the order above stated.

Exceptions filed June 30, 1933.

█ (1) Taking up first the exception of no cause of action by the United States Fidelity & Guaranty Company to the intervention of Peden Iron & Steel Company, I am of the view that, while a subcontractor or those having claims for labor or materials furnished either to him or to the original contractor may have a right of action in this proceeding upon the bond by the principal contractors with the government (Bartlett & Kling v. Dings [C. C. A.] 249 F. 322; Chicago Bonding & Surety Co. v. U. S. [C. C. A.] 261 F. 266; Taylor v. Connett [C. C. A.] 277 F. 945; Mankin v. U. S. to Use of Ludowici-Celadon Co., 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315, affirming [C. C. A.] 158 F. 1021), they cannot implead the surety upon the bond of a subcontractor given for the protection of the principal contractor. This is a statutory proceeding (title 40, § 270, U. S. C. [40 USCA § 270]) upon the bond required to be given to take the place of the lien which the furnishers of labor and material would have against the work in the case of a private individual. There can be no lien upon government property, and it cannot be sued without its consent. Any one having a claim against the contractor with the government, after certain delays and after its failure to sue, may proceed in the name of the United States upon the bond which the law requires the government to exact in letting public works. It provides that there shall be but one suit, and "any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work" may sue or intervene in the proceeding after it has been instituted, regardless of the amount of the claim. It cannot be commenced until after the completion of the work and final settlement by the government, and then not later than one year thereafter. "If the recovery on the bond should be inadequate to pay the amounts found due to all of said creditors,

judgment shall be given to each creditor pro rata of the amount of the recovery." The fact that it is required to be brought in the name of the government carries the idea that the claimants authorized to sue on the bond shall, in effect, occupy the position of the United States, if it were compelled to pay the furnisher of labor and materials to discharge a lien. In other words, it substitutes them in place of the government, and reasonably contemplates that the proceedings shall be limited to and determined by the rights of all parties in and under the bond or obligation given to the United States. To this extent it is in the nature of a proceeding in rem on the bond. To engraft either a contractual or legal claim or controversy between these claimants and a third person, such as the surety on a subcontractor's bond, who has voluntarily appeared or under process been brought into the matter, and as to whom the government has no interest and is not privy, would, I think, go beyond the purpose of the law and bring in persons and parties who could not otherwise, because of citizenship, etc., be sued in this court, under the limited jurisdiction conferred by this statute. I see no reason why any one having claims which, but for the fact that those were public buildings, would have had a lien thereon, may not avail himself of the benefits of the statutory bond, but, as to those bonds given by subcontractors to persons other than the government (which are not required by law), claimants are relegated to the normal remedies and proceedings which exist in suits to which the government is not a party. My view, therefore, is that the motion of the United States Fidelity & Guaranty Company to dismiss the demand as to it, by the Peden Iron & Steel Company, should be sustained.

■ (2) As to the exception of L. C. Maples to the intervention of Peden Iron & Steel Company, (a) I think the intervener should set forth, if it has that information, whether the contract between O'Pry Heating & Plumbing Corporation and Marcus E. Warden (the latter being the person to whom the said intervener claims to have furnished the labor and materials) was oral or in writing; (b) and, if it has copies of the contract and bonds alleged to have been annexed to the intervention, but which appear to have been omitted, they should be produced and filed; (c) it should also state whether the agreement between it and Warden was oral or in writing, and annex it to its reply. With reference to (d) and (e), an amendment subsequently filed by this intervener has copies of the accounts against Warden annexed, and otherwise gives the information called for under these headings.

(3) A compliance with the ruling just made will suffice to meet the objections contained in the exception against Smith-Jones Company resting upon the same grounds.

■ (4) As to the exception of Hartford Accident & Insurance Company and the intervention of Crane Company, (a) it is sufficient to say that the intervention of Marcus E. Warden discloses that the contract between L. C. Maples and O'Pry Heating & Plumbing Corporation was in writing and recorded in Mortgage Book YY, page 494, of Bossier parish, La., and I think affords all the information on that score necessary in this proceeding; (b) this intervener should state whether its agreement with O'Pry Heating & Plumbing Corporation was oral or in writing; (c) and it should state affirmatively whether all the work and materials sued for were done and furnished at Barksdale Field and covered by contract and bond with the government on this job.

(5) As to the exception of Hartford Accident & Indemnity Company to the intervention of Peden Iron & Steel Company, the same will be disposed of by a compliance with the ruling made upon a similar exception to this intervener's claim by L. C. Maples.

(6) What has just been said is equally applicable to the exception of the United States Fidelity & Guaranty Company's exception to the claim of Peden Iron & Steel Works, and, besides, an exception of no cause of action by this exceptor to this intervention has been sustained.

(7) A compliance by the Crane Company with the ruling under No. 4 above upon the exception of Hartford Accident & Indemnity Company will dispose of the same exception filed by L. C. Maples under this number.

(8) This exception of O'Pry Heating & Plumbing Corporation to the intervention of Peden Iron & Steel Company will be met by a compliance by the latter with the rulings made above upon similar exceptions of other parties.

Exceptions Filed September 26, 1933, by Same Counsel.

■ (1) I think this exception of L. C. Maples is without substance, and should be overruled.

(2) This exception of Smith-Jones Company is also without merit and will be overruled.

(3) The joint exception of L. C. Maples, Hartford Accident & Indemnity Company, Smith-Jones Company, and United States Fidelity & Guaranty Company to the intervention of Warden is also without merit and will be overruled.

(4) This exception of Maples to the intervention of Taylor-Seidenbach Company, Inc., is without merit and will be overruled.

(5) This is an exception of no cause of action by Smith-Jones Company, formerly operating under the name of O'Pry Heating & Plumbing Corporation, to the claim of Taylor-Seidenbach Co., Inc. The intervener alleges the contract between the United States and L. C. Maples, the subcontract between the latter and O'Pry Heating & Plumbing Corporation (now Smith-Jones Company), the subcontract of the latter with Marcus E. Warden, and that the present intervener, Taylor-Seidenbach Company, Inc., had delivered to Warden materials for use in the construction of the thirty-four noncommissioned officers' quarters contracted for by Maples with the government. In so far as this claimant asserts the right against the bond given by Maples to the government, I think it does state a cause of action. U. S., for Use of Hill, v. American Surety Company of New York, 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437.

(6) What has just been said applies to the exception of Hartford Accident & Insurance Company to the intervention of Taylor-Seidenbach Company, Inc.

(7) This is an exception by the New York Casualty Company, represented by counsel other than those appearing in all of the foregoing exceptions, to the point that the intervention of Peden Iron & Steel Company discloses no cause of action against the present exceptor. Marcus E. Warden gave the performance bond to O'Pry Heating & Plumbing Corporation for the faithful performance of his contract with them, upon which the New York Casualty Company was surety, and the Peden intervention seeks to recover against this surety in the present proceeding. For the reasons given above in No. 1 of the first list of exceptions, involving an identical question raised by the United States Fidelity & Guaranty Company to the intervention of Peden Iron & Steel Company, seeking to recover upon the bond of O'Pry Heating & Plumbing Corporation, given to L. C. Maples, the present exception of no cause of action will be sustained.

The amendment of Peden Iron & Steel Company, filed October 5, 1933, referred to hereinabove, will be allowed, subject to the rulings made on the exceptions disposed of in this opinion, in so far as they affect this claim.