UNITED STATES for Use and Benefit of BUCKELEW HARDWARE CO. v. UNION INDEMNITY CO. et al. (PITTSBURGH PLATE GLASS CO. et al., Interveners).

No. 2394.

District Court, W. D. Louisiana, Shreveport Division.

Feb. 16, 1934.

Joe B. Hamiter, of Shreveport, La., for plaintiff.

Rosen, Kammer, Wolff & Farrar and J. C. Henriques, all of New Orleans, La., for defendant.

John B. Files, Robt. L. Garrett, Blanchard, Goldstein, Walker & O'Quin, Irion & Switzer, J. H. Tucker, Jr., Wilkinson, Lewis & Wilkinson, Foster, Hall, Barret & Smith, Hardin & Coleman, Pugh, Grimmet & Boatner, J. N. Marcantel, and E. W. & P. N. Browne, all of Shreveport, La., R. L. Carlock, of Fort Worth, Tex., Chas. H. Jackson, Jr., of San Antonio, Tex., and Porteous, Johnson & Humphrey, of New Orleans, La., for interveners.

DAWKINS, District Judge.

This is a suit under the provisions of section 270, title 40, of the U. S. C. (40 USCA § 270). Plaintiff alleges that on April 17, 1931, the government entered into a contract with Ashton-Glassell Company, Inc., a Louisiana corporation, to construct forty-two company officers' quarters at Barksdale Flying Field, Bossier parish, La., for the price of $462,457, and that the contractor furnished a performance bond in the sum of $231,228.-50, with the Union Indemnity Company, also created under the laws of Louisiana, as surety; that the said company, on or about the 11th day of May, 1931, "entered into a reinsurance agreement with the * * * International Reinsurance Corporation," a Colorado corporation, "in favor of the United States, reinsuring and counter-securing the said Union Indemnity Company on said contract and bond to the extent of $27,823.23"; that between the dates of March 8, 1932, and June 14, 1932, petitioner had sold and de-livered to the said contractor building materials to the value of $12.23, which had not been paid, and which materials were purchased for and used in the construction of said officers' quarters; that the Union Indemnity Company was in the hands of a receiver appointed by the state court for the parish of Orleans; that the Ashton-Glassell Company, Inc., the contractor, had been adjudged a bankrupt and a trustee appointed. These companies were cited through their receivers and trustee, respectively. The prayer was for a judgment in solido against all of said defendants, including the International Reinsurance Corporation.

On April 10, 1933, the Pittsburgh Plate Glass Company filed an intervention, reciting the same facts and circumstances, including the making of the contract and bond with the government; that it had, at the request of the said Ashton-Glassell Company, Inc., sold and delivered to it $53.54 worth of material, which had gone into the said job. It prayed for judgment against the same parties and in the same manner as the original petitioner.

On the same day Victoria Lumber Company, through its receivers, intervened, alleging upon the original contract and bond, as well as the reinsurance bond, and further, that it had entered into a contract with the Ashton-Glassell Company, Inc., to furnish the millwork for twenty-nine type A and thirteen type B quarters at Barksdale Field, for the consideration of $28,200, as per copy of contract attached; that, in addition, it had furnished extra materials to the extent of $3,156.72, as per itemized statement annexed, all of which materials so furnished were used in the construction of said buildings; and that there was a balance due of $8,092.53, for which it prayed judgment against the three defendants in solido.

Likewise on the 19th day of April, 1933, C. V. Brandt of San Antonio, Tex., "operating and doing business as Brandt Floor Company," intervened, claiming the sum of $179.72 for finishing the floors "in the forty-two officers' quarters" and repeating all of the allegations of the preceding claimants with regard to contracts, bonds, etc. and praying for judgment against the contractor, surety company, and the reinsurer. He alleged that his dealings were direct with the contractor, Ashton-Glassell Company, Inc.

On the same day similar intervention was filed by C. W. Milford, "operating and doing business as Acme Weather Strip & Caulking Company, of Dallas, Texas," in

which he alleged his agreement was also direct with the contractor, setting forth the contract, bond, etc., and praying for judgment against the same parties in solido for a balance of $121.80.

On May 3, 1933, the Robinson-Slagle Lumber Company, Inc., a Louisiana corporation, through its receivers, intervened, alleging it had furnished labor and materials "to the Ashton-Glassell Company, Inc.," upon which a balance of $1,356.46 remained due. It adopted "the allegations of the plaintiff herein," except as to the amount of its claim, and prayed judgment against the same parties in solido.

May 20, 1933, Decatur Cornice & Roofing Company, an Alabama corporation, "operating, doing business and trading as Decatur Iron & Steel Company," intervened, repeating substantially the allegations of the original plaintiff; that, by agreement with the contractor, it had "furnished at different times from and including June 13, 1931, to and including May 25, 1932, certain materials and supplies" for the construction of the said officers' quarters, upon which there was a balance due of $5,256.79, for which it prayed judgment against the same defendants in solido.

May 23, 1933, Albert Karelius intervened, repeating in substance the allegations of the original petition; that petitioner had "entered into a contract in writing, as sub-contractor, with the defendant Ashton-Glassell Company, Inc.," to do the "lathing, plastering and stucco work for twenty-nine Type A and thirteen Type B, company officers' quarters, for the sum of $57,750.00," payable as provided in said contract; that extra labor and material was performed and furnished, resulting in a total of $59,951, upon which there was a balance due of $714, and for which he prayed judgment in solido against all three of the original defendants. On the 27th of May he obtained an order to the defendants Ashton-Glassell Company, Inc., through its trustee, the Union Indemnity Company, through its receivers, and the International Reinsurance Corporation, to show cause why "the relief prayed for in his petition * * * should not be granted."

May 27, 1933, the Crane Company of Chicago, Ill., repeating substantially the allegations of the original petition, intervened, and in addition thereto alleged that the International Reinsurance Company had been placed in the hands of receivers, who were named; that on the 7th day of May, 1931, Ashton-

Glassell Company, Inc., entered into a sub-contract with O'Pry Heating & Plumbing Corporation, now Smith-Jones Company, for the furnishing and installing of the plumbing, heating, and gas fitting materials, and that petitioner sold and delivered to said Smith-Jones Company materials for said work which went into the construction of the buildings, amounting to $29,320.81, upon which there remains a balance due of $13,059.90, and for which petitioner prayed judgment in solido against the original three defendants, as well as the Smith-Jones Company, in solido.

June 6, 1933, Interstate Electric Company, a Louisiana corporation, of Shreveport, La., intervened. It adopted the general allegations of the original plaintiff, and alleged that between the dates of June 6 and 15, 1932, it sold and delivered to the contractor materials to the value of $57.77, as per itemized statement annexed, which were used on said job. It likewise prayed judgment against the contractor, its surety, and the Reinsurance Corporation, in solido.

June 9th Peden Iron & Steel Company intervened, making the same general allegations, and further that the general contractor, Ashton-Glassell Company, Inc., had "sub-let a part of the work to O'Pry Heating & Plumbing Corporation, * * * which later changed its name to the Smith-Jones Company"; that the latter company gave a performance bond with the United States Fidelity & Guaranty Company as surety; that the "O'Pry Heating & Plumbing Corporation sub-let a portion of the work" to Marcus E. Warden of San Antonio, Tex., "doing business as the Warden Sheet Metal Works," which included the labor and materials to install the warm air furnaces "on the above job, with the exception of the electrical work and gas piping"; that Warden gave a performance bond in the sum of $7,500, with the New York Casualty Corporation as surety; that the said bonds are controlled by section 270, title 40, U. S. C. (40 USCA § 270) or, in the alternative, by the law of Louisiana; that petitioner furnished the materials which were used on said job and for which there was a balance due of $1,125.48. It also prayed for judgment against the contractor, its surety, the Reinsurance Corporation, United States Fidelity & Guaranty Company, O'Pry Heating & Plumbing Corporation, New York Casualty Company, and Marcus E. Warden, in solido.

June 26th, an amended petition was filed

by "Peden Company," alleging that its name had been changed from Peden Iron & Steel Company, and further elaborating its claim.

June 1, 1933, North Texas Iron & Steel Company intervened, alleging that it had furnished materials upon the orders of the Ashton-Glassell Company, Inc., to the extent of $227.42, as per itemized statement annexed, which were used in the same job. It adopted all the pertinent allegations of the original petition and prayed for judgment against the contractor, its surety, and the Reinsurance Corporation, in solido.

June 8, 1933, Sproul Company, Inc., intervened, alleging that the general contractor, Ashton-Glassell Company, Inc., had made a subcontract with Brasted Lacquer & Spray Equipment Company, Inc., a Kansas corporation, for the "painting and decorating of the company officers' quarters," for the price of $13,000, as per copy of said contract annexed and made a part of intervener's petition; that intervener entered into an "agreement with said Brasted Lacquer & Spray Equipment Co., Inc., whereby it undertook to sell and furnish to said Brasted Company" upon open account certain materials for use on said job, which were so furnished and used, amounting to $695.53, upon which there was a balance due of $621.25, as per itemized statement annexed. It also made the general allegations as to the original contract with the government by the Glassell Company, its giving bond, etc.; that the Brasted Company gave a performance bond with the Constitution Indemnity Company, a Pennsylvania corporation, of Philadelphia, as surety; that, after intervener had furnished materials to the extent of $326.76, the Brasted Company became involved financially, and the Constitution Indemnity Company "took over said subcontract," and proceeded to carry out its said principal's contract, and "the remainder of the materials herein referred to being furnished upon the order" of said Indemnity Company, all of which went into the construction of said job; that, "since the execution of the bond and the performance hereinabove referred to, the said Constitution Indemnity Company has merged and consolidated with Lloyd's Casualty Company and Detroit Fidelity & Surety Company, forming a corporation styled The Lloyd's Insurance Company of America, which has been authorized to do business in Louisiana, with the Secretary of State as its agent for service of legal process." Intervener prayed for judgment "jointly and severally against Union Indemnity Company, International Insurance Corporation, Brasted Lacquer & Spray Equipment Co., Inc., The Constitution Indemnity Company and Lloyd's Insurance Company of America."

On June 8th C. C. Hardeman Company, Inc., a Louisiana corporation, of Shreveport, intervened, making the usual general allegations with respect to the general contract, bond, etc.; that, in connection with the contract between the general contractor and Brasted Lacquer Spray & Equipment Company, Inc., the latter gave a performance bond with the Constitution Indemnity Company as surety; that petitioner furnished materials for the work covered by the general contract on the orders of the Brasted Company, to the extent of $89.07, when it became involved and the work was taken over and completed by its said surety, to whom the remainder of the supplies were furnished and used on the job, and it asked judgment against the general contractor, its surety, Brasted Company and its surety, jointly and severally for the sum of $392.28.

On June 8th United States Fidelity & Guaranty Company intervened, repeating the general allegations similar to those of the intervener's preceding, and alleging the subcontract between O'Pry Heating & Plumbing Corporation with the general contractor, amounting to $72,000; that there was still due to O'Pry Heating & Plumbing Corporation the sum of $8,321.32, which had been assigned to this intervener on the 21st day of February, 1933, as per copy of assignment annexed; that the said Ashton-Glassell Company, Inc., had been required to furnish, and did furnish, a bond with the Union Indemnity Company as surety; that the latter had made a reinsurance agreement with the International Reinsurance Corporation to the extent of $27,823.23, copy of which was annexed; and that supplies and materials furnished by intervener's assignor were actually used on the job. Intervener prayed judgment against the general contractor, its said surety, and the Reinsurance Corporation in solido.

June 12th Alamo Paint & Wallpaper Company, a Texas corporation of San Antonio, intervened, alleged the general conditions embraced in other interventions, and that it had furnished materials which were used on the job to Brandt Floor Company, "owned and operated by C. V. Brandt" under his agreement with the original contractor

referred to above; that there remained due to intervener the sum of $647.69, for which it asks judgment "generally and severally" against the general contractor, its surety, and the Reinsurance Corporation.

June 12th N. P. O'Neal, "owner and operating under the trade name of Hope Brick Works," intervened, adopted the general allegations of the original petitioner, and alleged that between the dates of July 14 and October 1, 1931, he had sold, furnished, and delivered, and there had been used in said job, materials and supplies to the extent of $7,178.82, upon which there was a balance due of $181.19, for which he prayed judgment against the contractor, its surety, and the Reinsurance Corporation "jointly and in solido."

On June 12th the Globe Indemnity Company, a New York corporation, intervened and adopted the general allegations of the original petition; that on the 15th of June, 1931, H. P. Ross of R. & H. Electric Company, made a contract with Ashton-Glassell Company, Inc., to furnish the labor and materials in accordance with the contract with the government for the electrical work in the sum of $12,500, which said work had been performed according to the agreement; that a performance bond was exacted of Ross, copy of which is annexed; that extras were added, and there remained due upon said account $2,762.29; that the claim of said Ross had been assigned to intervener and upon which it prayed judgment against the original contractor, its surety, and the Reinsurance Corporation in solido.

On June 12th the Constitution Indemnity Company, a Pennsylvania corporation of Philadelphia, intervened and also adopted the general allegations of the original petition; that it had signed the bond of the Brasted Lacquer & Spray Equipment Company as surety; that said Brasted Company continued the performance contract until about March, 1932, "when said Brasted Lacquer & Spray Equipment Company defaulted on said contract"; that "it took over the performance thereafter of said subcontract, and the Brasted Company assigned and sold to your intervener all of its rights and money due under said contract," as per copy of the assignment attached and made part of the intervention; that intervener completed said contract, and there remains due a balance thereon plus extras of $8,246.20, for which intervener prayed judgment against the general contractor, its surety, and the Reinsurance Corporation, in solido.

June 14th Marcus E. Warden of San Antonio, Tex., "operating as Warden Sheet Metal Works," intervened, repeated the general allegations of the contract, bond, etc., the subletting of a part of the work to O'Pry Heating & Plumbing Corporation, the giving by the latter of a performance bond in the sum of $72,000 with the United States Fidelity & Guaranty Company as surety; that said O'Pry Heating & Plumbing Corporation sublet to this intervener, on August 20, 1931, a portion of its said contract for the furnishing of labor and materials for the installation of the warm air furnaces in thirty-four noncommissioned officers' quarters and forty-two commissioned officers' quarters, for the sum of $14,900; that the materials had been furnished and installed in the forty-two commissioned officers' quarters, which amounted to $5,925, to which extras or additions were made to the extent of $3,-105.50; that said work was done and the materials furnished according to contract, and there remained due and unpaid "on this construction job" $3,969.74 "intervenor's damage $10,000"; and that intervener obtained "materials and supplies" from the following concerns for this job, in the amounts shown, to wit:

1. Peden Iron & Steel Co. of Houston, Texas.............. $1,125.48
2. Charles Johnson Company of Peoria, Ill.................... $ 298.98
3. Southwestern Ceiling Co., San Antonio, Texas.............. $ 87.08
4. Taylor-Seidenbach Co., Inc., Shreveport, La.............. $ 260.48

It prayed for citation upon the Ashton-Glassell Company, Inc., Union Indemnity Company, International Reinsurance Corporation, O'Pry Heating & Plumbing Corporation, Inc., Smith-Jones Company, and the United States Fidelity & Guaranty Company; that intervener's creditors above named be given notice, and for "judgment against all of the defendants in accordance with law and the 'Heard Law,' for its debt, interest and attorneys fees," etc.

June 14th Industrial Tile Company, an Oklahoma corporation, intervened, adopted the general allegations of the original petition; that intervener made a contract with the Ashton-Glassell Company, Inc., to furnish and install all tile for the forty-two "company officers' quarters at Barksdale Field, for the price of $12,174.00"; that it had complied with its contract, and there remained due $1,821, for which it prayed judg-

ment against the contractor, its surety, and the Reinsurance Corporation, in solido.

June 14th Tiling Service Company, Inc., a Texas corporation, of the city of Fort Worth, intervened, repeated the allegations of a general character of the original petition; that the general contractor had made a written contract with Industrial Tile Company to furnish and install all tile for twenty-nine type A and thirteen type B houses at Barksdale Field, for which the general contractor was to pay $12,174; that the said Industrial Tile Company fulfilled its contract; that this intervener's business is furnishing of tile to builders and contractors, and that "at the request of the Industrial Tile Company, Inc. it supplied to the said sub-contractor practically all of the tile material used by" it "on said government job, which was actually used thereon"; that on November 19, 1931, the said Industrial Tile Company assigned to intervener "as security for the payment of its account * * * all moneys due or to become due, to-wit, from Ashton-Glassell Company, Inc.," copy of which assignment was annexed, and upon which there was a balance due of $1,821.09, for which it prayed judgment against the contractor, its surety, and the Reinsurance Corporation.

June 15, 1933, Shapleigh Hardware Company, a Missouri corporation, intervened. It made the same general allegations as other petitioners; that under an agreement with the principal contractor, between the dates of October 14, 1931, and May 17, 1932, it furnished materials and supplies which were used in said job to the amount of $12,733.45, upon which there was a balance due of $3,681.22. It prayed for judgment against the principal contractor, its surety, and the Reinsurance Corporation, "jointly and severally."

The following exceptions and motions have been filed:

(1) April 13, 1933, Clay W. Beckner and S. Sanford Levy appeared as receivers of the Union Indemnity Company and moved to dismiss the original petition as to it, on the ground (a) that they were domiciled in the city of New Orleans, Eastern District of Louisiana; (b) that in a proceeding brought by the secretary of state against the Union Indemnity Company it had been declared insolvent and its dissolution had been decreed by the civil district court for the parish of Orleans, and for this reason this court was without jurisdiction rationae materiæ; and

(c) that they could not be sued without leave of the court which had appointed them.

(2) June 8th exceptions were filed by these same receivers to the intervention of Crane & Co., in which they (a) reiterate all matters pleaded in exceptions previously filed, (b) and (c), and moved to dismiss on the same grounds as urged to the original petition mentioned last above.

(3) June 8th by the said receivers upon the same grounds to the intervention of Albert Karelius.

(4) June 20th by the International Reinsurance Corporation, through counsel, who averred that it had been, since the institution of this suit, placed in receivership by the Chancery Court of Wilmington, Del., "and for this reason it was not qualified to stand in judgment and the receivers should be made parties." It prayed that it be "relieved from answering until said receivers are made parties."

(5) June 12th counsel for the trustee of Ashton-Glassell Company, Inc., excepted to the rule of Albert Karelius to show cause why his claim should not be allowed, "for the reason that this is not a proceeding to be tried on a summary process."

(6) On June 28, 1933, the receivers of Union Indemnity Company excepted to the intervention of United States Fidelity & Guaranty Company, upon the same grounds as urged to the original petition of plaintiffs.

(7) June 30th United States Fidelity & Guaranty Company excepted to the intervention of Peden Iron & Steel Company on the ground that it disclosed no right or cause of action against the exceptor.

(8) July 3d the receivers of the Union Indemnity Company filed exceptions to the intervention of Marcus E. Warden, as urged to the original petition and other interventions.

(9) October 2d United States Fidelity & Guaranty Company excepted to the intervention of Marcus E. Warden, on the ground that the same did not disclose a right or cause of action against it.

(10) On the same day New York Casualty Company filed a similar exception of no cause of action to the intervention of Peden Company, Inc.

(11) On October 2d the receivers of International Reinsurance Corporation appeared and excepted to plaintiff's petition on the ground that it did not disclose a right

or cause of action in that (a) the "reinsurance bond sued on 'herein was not" the character of bond required by the Heard Act; "and (b) while the bond sued on was executed on a form purporting to contain a direct obligation to the United States of America, the provisions of said acts do not contemplate the execution of a reinsurance bond. * * * "

(12) October 2d Smith-Jones Company (formerly O'Pry Heating & Plumbing Corporation) to the intervention of Marcus E. Warden, on the ground that it did not disclose a cause or right of action as to it.

(13) On October 2d by International Reinsurance Corporation, through its receivers, exceptions to the claims of all interveners who had sued it on the reinsurance bond given in favor of the United States as the reinsurer of Union Indemnity Company, on the ground that said claims disclosed no cause or right of action for the same reasons urged to the petition of plaintiff, No. 11 above.

I shall take up these exceptions in the order stated above.

█ 1. In ordinary cases and circumstances, the position taken by the receivers of the Union Indemnity Company in their exception to the jurisdiction and want of authority from the court of their appointment to sue them would be correct, but we have an extraordinary situation here. This is the only court in which a suit by any furnisher of materials can sue upon the bond given the United States, and the rights of every claimant to the benefits of that bond must be asserted in this one action alone. The reasons, no doubt, for the provision of the statute that every one asserting such a claim shall be drawn into the same suit are: (1) That the liability of the surety is a fixed and definite amount stated in the bond, and it might be, as frequently happens, that the claims would exceed that sum, in which event the recovery can be prorated in order to insure equality and just treatment to creditors of the same classes; and (2) the situs of the proceeding, i. e., where the work is performed, presumably will be more convenient to the greatest number of claimants. Then, too, to permit suits upon the bond at the domicile of the surety, as well as the place where the work was done, could easily result in judgments of different character and in excess of the amount of the bond, ultimately forcing something akin to a concursus or interpleader action in some jurisdiction, if the recovery against the surety is to be held down to the amount of its bond. The rule relied on by the receivers was founded originally in comity, which gradually developed into a principle of law, but, when the reason for the rule disappears, or a statute by its express terms makes inapplicable such a rule, it must, necessarily to that extent, be held to have been superseded or repealed. I see no other conclusion. See the well-considered case of United States v. Illinois Surety Co. et al. (D. C.) 238 F. 840, affirmed (as James S. Hopkins, Receiver, etc., Plaintiff in Error, v. U. S. of America, for Use and Benefit of Ellington & Guy, Inc.) 246 U. S. 655, 38 S. Ct. 423, 62 L. Ed. 924, on authority of U. S. v. Congress Construction Co., 222 U. S. 199, 32 S. Ct. 44, 56 L. Ed. 163; also Macdonald v. Aetna Indemnity Co., 93 Conn. 165, 105 A. 470; People v. Metropolitan Surety Co., 211 N. Y. 107, 105 N. E. 99; In re Emmet, 216 N. Y. 273, 110 N. E. 610.

2, 3, 6, and 8. What has just been said is equally applicable to similar exceptions to the interventions of the Crane Company, Albert Karelius, United States Fidelity & Guaranty Company, and Marcus E. Warden.

█ 4. The same rule is likewise applicable to the exception of International Reinsurance Corporation to the point, that, since the institution of this suit, it had been placed in the hands of receivers, and for that reason could not be made a party to this suit. Its receivers can and should be made parties hereto by appropriate proceedings.

█ 5. The exception of the trustee in bankruptcy of the contractor, Ashton-Glassell Company, Inc., to the rule of Albert Karelius, to show cause why his claim should not be allowed, should be sustained, and the matter permitted to proceed in the usual manner upon the merits and a trial along with other claims.

█ 7, 9, and 10. For the reasons given in the case of U. S. ex rel. General Iron Works et al. v. Maples et al. (D. C.) 6 F. Supp. 354, decided at this time, I think the exception of no cause of action of United States Fidelity & Guaranty Company to the interventions of Peden Iron & Steel Company and Marcus E. Warden, as well as of the New York Casualty Company to the intervention of Peden Company, Inc., should be sustained. The United States Fidelity & Guaranty Company has also intervened in this proceeding as the assignee of its principal in the bond upon which it became surety of the O'Pry Heating & Plumbing Corporation, and, while

this intervener's claim to the funds due its principal out of the bond of the original contractor ranks no higher than that of said O'Pry Heating & Plumbing Corporation, Inc., and the creditors of the latter, it would seem, would come ahead of said United States Fidelity & Guaranty Company, I do not believe that their rights against it as surety upon the said subcontractor's bond can be determined in this case, but they will be relegated to independent suits either in the state or federal court, according to circumstances, for any balance that may remain due after exhausting the bond of the principal contractor with the government.

■ 11 and 13. As to the contention that the furnishers of labor and material cannot sue upon the reinsurance bond in favor of the United States, upon which the International Reinsurance Corporation is surety, I am of the opinion that this is an obligation in favor of the United States upon which it could have sued the same as the one signed by the Union Indemnity Company, and for that reason it was taken to protect both the government and said claimants. I see no reason why the government might not accept two or more bonds with separate sureties for this protection, or any additional bond or security given for the same purpose cannot be availed of by either the government or the furnisher of labor and materials. The statute does not describe the number or amounts of "usual penal bonds" which may be given, and any such bonds given for the declared purposes of the law I believe fall within that category. This reinsurance bond was furnished by the government to the original plaintiffs, along with that of the Union Indemnity Company, as a part of the papers upon which to institute suit according to the statute.

■ 12. The intervention of Marcus E. Warden alleges that the Smith-Jones Company (formerly O'Pry Heating & Plumbing Corporation) was the subcontractor of Ashton-Glassell Company, Inc., the principal contractor with the government, and that the said subcontractor sublet a part of the work to Warden for the price named in the intervention. In this situation, I think it does allege a cause of action against the said Smith-Jones Company for the purposes of this suit and recovery upon the original bond.

There should be judgment on the several exceptions and pleas in accordance with the views herein expressed.